# CHARLESTON.

D. DICKINSON v. WILLIE THORN, *Pres. et als., etc.*

(No. 5895)

Submitted December 10, 1926.   Decided December 14, 1926.

1. ELECTIONS—*Where Question of Ratification or Rejection of Act of Legislature Has Been Submitted to Voters, and Duty Cast Upon County Court as Board of Canvassers, by Said Act, to Canvass and Record Result, Such Board Has no Authority to Pass Upon Questions Involving Validity of Act.*

   Where the question of ratification or rejection of an act of the legislature has been submitted to the voters, and a duty cast upon the county court as a board of canvassers, by said act, to canvass and record the result, such board has no authority to pass upon questions involving the validity of the act. (p. 674.)

2. SAME—*Where Record Discloses Intention of Said Board to Entertain and Act Upon Such Questions, Prohibition Will Lie.*

   Where the record discloses an intention of said board to entertain and act upon such questions, prohibition will lie. (p. 676.)

Rule in Prohibition, Barbour County.

A writ of prohibition was awarded D. Dickinson, Petitioner against Willie Thorn and others etc. Ex-officio a Board of Canvassers of Barbour County and others, respondents.

*Writ awarded.*

*J. Blackburn Ware, Hugh S. Byrer* and *Paul B. Ware,* for petitioner.

*W. T. George* and *Dayton Stemple,* for respondents.

WOODS, JUDGE:

A rule issued from this Court on the 7th day of December, 1926, requiring the commissioners of the county court of Barbour county, sitting as a board of canvassers for said county, to refrain from taking any action upon a motion, made by one Robert F. Ryan, to reject all the ballots cast at the last gen-

eral election for the ratification or rejection of an act of the Legislature, 1925 (Chapter 117), "to reform, alter and modify the county court of Barbour county, under the twenty-ninth section of the eighth article of the Constitution of West Virginia", by which act it was provided inter alia that the county court shall be composed of eight commissioners. Said motion was to reject all ballots for the following reasons: (1) that no proper amendment was submitted by the Legislature of 1925 or at any other time upon said question; (2) that the question under the Constitution and laws of this State was not properly submitted to the voters at the said election; and (3) for other reasons appearing on the face of the record the votes cast upon said matter are wholly ineffective to constitute a new body in lieu of the county court of Barbour county.

Respondents appeared on the return day and answered that unless said motion related in part to some matter other than the validity or constitutionality of the act, or a matter or question within their jurisdiction, they would overrule said motion; and asked that they recover costs in the defense of the rule.

So much of the act (Chapter 117, Acts 1925), as is necessary to the decision of the question here involved, reads as follows:

"Sec. 5. At the general election in the year one thousand nine hundred and twenty-six the question of the adoption of the system provided for in this act shall be submitted to the voters of the county of Barbour, voting at such election. Notice of such election shall be given by the publication of this act in each of the newspapers published in said county, once in each week, for four successive weeks next preceding said election. The tickets for the vote on such question shall be furnished by the county court, and shall have printed thereon, "for modification of county court," and "against modification of county court," and the said ballot shall otherwise conform to the requirements of chapter three of the code of West Virginia respecting ballots to be voted at a general election, but the said ballot shall be separate from the ballots voted at such general election aforesaid.

"Sec. 6. Such election, at each place of voting in said county, shall be superintended, conducted and returned by the same officers, at the same time, and in the same manner as the election of members of the legislature is superintended, conducted and returned, and the result of each place of voting shall be certified and returned to the county court now in existence in Barbour county. *Said court shall convene in special session as a board of canvassers, and do and perform all acts and things respecting the said election required of them by law, with relation to elections by the people, so far as applicable thereto.*

"Sec. 7. If a majority of the votes cast at said election be for modification of the county court, then this act shall be and remain in full force and effect; but if a majority of such votes be against modification of the county court, then this act shall be of no further force or effect."

The petition avers that every step necessary to a valid referendum, under said sections five and six, was taken. The return does not controvert this allegation. The county court of Barbour met as a canvassing board on the 8th of November, 1926, canvassed the result of the election, and ascertained therefrom that there had been 4,498 votes cast for the modification of said county court, and 990 votes against said modification—the combined vote for and against being but 37 votes less than the total vote cast for candidates for member of the house of delegates of said county. The result of this canvass was made a matter of record. Notwithstanding that in said order it declared "the board having completed the canvass of the votes as provided by law", an adjournment was taken to November 11, 1926. At the adjourned meeting no order was entered respecting the vote on the modification of said county court, but another adjournment was ordered until the 19th, and then to the 20th of November, on which latter date the motion complained of was made by respondent Ryan. And as to the matters arising on said motion, the order states that "the Court takes time to consider of its judgment thereon till December 11, 1926, at 9 o'clock, A. M., at which time the Court will hear arguments upon said ques-

tion.'' This same order further recites, in effect, that while the returns had been canvassed and the number of votes for and against modification found and recorded, the board had made ''no proclamation as to whether or not said proposed amendment could or would be effective as provided for by chapter 117 of the Acts of Legislature of West Virginia, 1925.'' Respondents make no issue as to the actions of the board of canvassers above enumerated.

The powers and duties of a board of canvassers of an election are prescribed in sections 68-71, Chapter 3, Code. The act under consideration makes the county court a board of canvassers to declare the result of the election as prescribed under the rules governing general elections, so far as applicable. The motion entertained admits of but one interpretation —that of asking the board of canvassers to pass upon the validity of the act. In entertaining said motion, the board of canvassers, by reasonable inference, has indicated that it proposes to judicially determine this question. To do so would be to exercise a judicial function by a ministerial body in excess of its powers. *Varney* v. *County Court,* 102 W. Va. 325, 135 S. E. 179; *Brazie* v. *Commissioners,* 25 W. Va. 213. The duty of the board of canvassers here was limited to canvassing the returns and entering the result of such canvass on the record. This has been done. While sitting as such it has no power to inquire into and determine the validity of the act. *Phillips* v. *Heatherly,* 102 W. Va. 116, 134 S. E. 594. While the respondents disclaim any intention of acting beyond their jurisdiction, they do not disclose any legal reason for entertaining the motion. The motion on its face, evincing an intention, as it does, to have the board act upon matters beyond its jurisdiction, the receiving thereof and setting down the same for hearing by the board, makes prohibition proper. *Saint Marys* v. *Woods, Judge,* 67 W. Va. 110. Under these views the writ as prayed for will be awarded.

*Writ awarded.*