Mr. Justice Hall
delivered the opinion of the Court.
The parties appear here in the same order as in the trial court. We refer to them as plaintiff and defendants.
The plaintiff, a common carrier, certificated by the Public Utilities Commission of the State of Colorado, herein referred to as the P. U. C., on May 7, 1962, commenced this action seeking to enjoin the defendants from *372 hauling cement, in bulk, to Denver’s Stapleton Airport. In its complaint the plaintiff alleges that it holds Certificate No. 2177, issued by P. U. C., whereby it is authorized to transport cement “in bulk from and to, to and from, and between, all points in the State of Colorado as a common motor carrier.” That the defendants hold private carrier Permit B 1048, issued to them by P. U. C., which permit does not grant to them any authority to transport cement in bulk to Stapleton Airport. Plaintiff further alleges that the defendants have contracted to and are about to transport cement in bulk to Stapleton Airport, and sought an injunction restraining the defendants from so transporting cement in bulk to Staple-ton Airport.
The defendants moved to dismiss the complaint for the reason that the court had no jurisdiction in the matter, primary jurisdiction thereof resting in the P. U. C., and that plaintiff must have sought and exhausted administrative remedies available before the P. U. C. prior to resort to the courts.
The trial court sustained this motion and, on June 21, 1962, entered a final judgment dismissing the complaint.
The plaintiff is here by writ of error seeking reversal.
Here we have two carriers, each certificated by the P. U. C. One, having P. U. C. authority to do certain acts, seeks to enjoin the other from doing the same acts allegedly without P. U. C. authority.
The trial court held that such a suit cannot be maintained without an affirmative allegation that the plaintiff had pursued and exhausted its administrative remedies, and that had plaintiff exhausted its administrative remedies it could then by certiorari have court review of the orders of the P. U. C., as provided by C.R.S. ’53, 115-6-15.
Counsel for plaintiff contend that C.R.S. ’53, 115-9-24 (governing any “motor vehicle carrier”), and 115-11-21 (governing any “private carrier by motor vehicle”); *373 each grant to plaintiff the right to invoke the aid of the court as it here sought to do.
Each of the foregoing sections provides that P. U. C. shall, whenever it be of the opinion that any “motor vehicle carrier” (115-9-24) or any “private carrier by motor vehicle” (115-11-21):
“ * * * is failing or omitting to do anything required of it by law, or by any order, decision, rule, direction or requirement of the commission, or is doing anything, or about to do anything, or permitting anything, or about to permit anything to be done, contrary to or in violation of the law or of any order, decision, rule, direction or requirement of the commission, it shall request the attorney of the commission or the attorney general of the state or the district attorney of any district to commence an action or proceeding in the district or county court * * * , in the name of the people of the state of Colorado for the purpose of having such violations or threatened violations stopped and prevented, either by mandamus or injunction.
“Any person or corporation injured by such noncompliance of any motor vehicle carrier with the provisions of this article or of any other provisions of the law or orders, decisions, rules, directions or requirements of the commission, may apply to any court of competent jurisdiction for the enforcement thereof, and the court shall have jurisdiction to enforce obedience thereto by writ of injunction or other proper process, mandatory or otherwise, and to restrain any such motor vehicle carrier, its officers, agents, employees or representatives from further disobedience thereof, or to enjoin upon it or them obedience to the same, and any person or corporation so injured shall likewise have cause of action in damages, and be privileged to pursue the usual and proper remedies to redress the same as in. like cases provided by law.” (Emphasis supplied.)
Thus it appears that P. U. C. has been granted legis *374 lative authority to invoke the aid of the attorney general and to resort to the courts to see to it that laws, rules, regulations, orders and decisions dealing with public utilities are obeyed, enforced and made effective. This P. U. C. can do on its own volition and no doubt could and would do at the request of an aggrieved party in a situation such as that of which plaintiff here complains.
Plaintiff contends, however, that the identical last paragraphs of the above sections grant to it in plain and unequivocal language the right to institute and maintain this action, and vest the court, if such be necessary, with jurisdiction to hear and dispose of the matter. We agree.
The language is clear and without ambiguity; it is not in conflict with any other provisions of law governing utilities or otherwise.
Defendants contend that rights granted by the foregoing sections do not come into play until after P. U. C. has proceeded pursuant to the provisions of the statutes and entered a final order subject to review by certiorari. To so hold would necessitate complete disregard of the statutory authority granted to plaintiff and others.
District courts have general jurisdiction. Article VI, Section 11, of the Colorado Constitution provides:
“The district courts shall have original jurisdiction of all causes both at law and in equity, * * * .”
Article II, Section 6, of the Colorado Constitution provides :
“Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; * *
Plaintiff sought to invoke the aid of the district court; it alleges ownership of property (its certificate of authority) and injury thereto by the defendants; it sought a remedy for injury and, contrary to the foregoing constitutional and statutory mandates, was turned away .empty-handed by the trial court.
Defendants urge that it is a general rule -of - law *375 that where the legislature has created administrative agencies and invested them with regulatory powers, that resort may not be had to the courts to obtain relief that might be obtained through the agency by resort to its regulatory powers, until and unless one seeking such relief has exhausted his remedies before the administrative agency.
We need not pass on the correctness of that broad, general statement, for here the legislature that created the administrative body and defined its duties and powers expressly provided that “Any person * * * injured by * * * any motor vehicle carrier” or “any private carrier by motor vehicle * * * may apply to any court * * * and the court shall have jurisdiction to enforce obedience thereto by writ of injunction * * *, and any person * * * so injured shall * * * have cause of action in damages, and be privileged to pursue the usual and proper remedies to redress the same as in like cases provided by law.”
In Eveready, Inc., v. P.U.C., 131 Colo. 172, 280 P. (2d) 442, Southwestern Transportation Company, the holder of a P. U. C. certificate, complained to P. U. C. that Eveready, holder of a certificate from P. U. C., was transporting cement without authority so to do and to Southwestern’s damage. P. U. C. instituted an investigation and ordered Eveready to show cause why its certificate should not be revoked because of violations of the terms thereof. Instead of responding to said order, Eveready commenced an action in the district court and sought to enjoin P. U. C. from proceeding further with its investigation. The trial court dismissed the action and, in affirming the judgment of the trial court, we there said:
“ * * * When the commission seeks enforcement of its final orders, decisions and rules relating to motor vehicle carriers, section 321 of said chapter 16 prescribes the procedure to be adopted and followed in the enforcement of said orders, decisions and rules. The instant *376 proceeding had not reached the point where these sections of the statute applied. Certainly the general assembly did not by these sections contemplate that every alleged violation of the terms of a certificate of public convenience and necessity had to be heard in a court of record. The commission has inherent power to investigate alleged violations and to make its orders, subject to review as provided by law. Enforcement of its orders may become a matter for judicial determination in which event these sections apply.”
There the court recognized and gave full force and effect to the statute vesting P. U. C. with authority to see to it that the law is complied with and to that end to invoke the aid of the attorney general and the courts. Such holding cannot be construed to mean that the commission has exclusive jurisdiction over enforcement 'of its orders.
In McDill v. Motor Freight, 92 Colo. 198, 19 P. (2d) 204, Motor Freight, a certificated carrier, instituted an action in the district court seeking to enjoin McDill, who had no P. U. C. authority, from transporting freight in competition with Motor Freight. During the pendency of the action, McDill acquired P. U. C. authority to operate as a private motor vehicle carrier.
Injunctive relief was granted by the trial court and the judgment of the trial court here reviewed.
There is nothing in the record in that case or the opinion of this court indicating that anyone ever questioned the right of Motor Freight to seek injunctive relief or lack of jurisdiction of the district court.
In Bushnell v. People, 92 Colo. 174, 19 P. (2d) 197, Bushnell was charged with “operating as a private motor vehicle carrier of freight for hire without a permit thereby required.” On conviction Bushnell sought review in this court by writ of error.
In reviewing statutory provisions governing public utilities and procedures, this court stated:
“Section 20 [Chapter 120, Laws 1931 — now CHS ’53, *377 115-11-21] authorizes suits by the attorney general * * *. It also authorizes: ‘Any person or corporation injured by such noncompliance of any private carrier by motor vehicle with the provisions of this Act or of any other provisions of the law or orders, decisions, rules, directions or requirements of the Commission, may apply to any court of competent jurisdiction for the enforcement thereof, and the court shall have jurisdiction to enforce obedience thereto by writ of injunction or other proper process, * * ”
Subsequent to entry of judgment herein, the filing of briefs and oral argument, this court resolved the case of Resler v. Northeastern Motor Freight, 154 Colo. 52, 388 P. (2d) 255. There, as here, a certificated carrier filed an action in the district court seeking to enjoin another certificated carrier from transporting freight beyond the scope of the authority granted and to the injury of the plaintiff. An injunction was granted and thereafter contempt proceedings were brought for violating the provisions of the injunction. On being held in contempt and punished therefor, Resler sought review in this court. We there said:
“Plaintiff filed its complaint under C.R.S. ’53, 115-11-21 in the district court of Logan County on November-24, 1959, alleging in substance that defendant in utilizing permit No. A-587 was willfully and wrongfully conducting operations and soliciting business in violation of the office restriction. * * *.
“Second, did the trial court have power to enjoin the defendant from operating in violation of the terms of his permit and to punish him for contempt for violation of its order?
“This question is answered in the affirmative. To hold otherwise would render meaningless C.R.S. ’53, 115-11-21 which expressly authorizes the bringing of an action to secure such relief.”
We adhere to the foregoing pronouncement which *378 is decisive of the question presented in this case. The foregoing language imposes no conditions to be met prior to invoking the aid of the district court, and the trial court here, in holding that the court was without jurisdiction until and unless the plaintiff had exhausted its administrative remedies, was in error.
Counsel for defendant have argued that primary jurisdiction rests in P.U.C. and that in general administrative remedies must be pursued and exhausted prior to resort to the courts.
In view of the fact that express legislative sanction exists for maintaining this action and that we have expressly approved such action, no useful purpose would be served in seeking to point out the differences in the various legislative acts involved and the different legal and factual situations involved in cases cited and relied upon by the defendants.
On oral argument it became manifest that the acts sought to be enjoined have been performed and that injunctive relief would now be of no avail.
The judgment is reversed and the cause remanded with directions that plaintiff be permitted to amend its complaint as it may be advised, and further proceedings had according to law and consistent herewith.
Mr. Justice Frantz and Mr. Justice Pringle specially concur.
Mr. Justice Moore not participating.