**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 1, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

THE INTEGRATED ASSOCIATES OF
DENVER, INC., a Delaware corporation;
THE INTEGRATED ASSOCIATES,
INC., a California corporation,

      Petitioners - Appellants,

v.

RYAN B. POPE,

      Respondent - Appellee.

No. 21-1019
(D.C. No. 1:19-CV-01662-CMA-KLM)
(D. Colo.)

_____

THE INTEGRATED ASSOCIATES OF
DENVER, INC., a Delaware corporation;
THE INTEGRATED ASSOCIATES,
INC., a California corporation,

      Petitioners - Appellants,

v.

RYAN B. POPE,

      Respondent - Appellee.

- - - - - - - - - - - - - - - - - - - - - -

JENNIFER GOKENBACH,

      Attorney - Appellant.

No. 21-1319
(D.C. No. 1:19-CV-01662-CMA-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **MATHESON**, **KELLY**, and **McHUGH**, Circuit Judges.

_____

These two appeals evolve from an arbitration proceeding in which the arbitrator found in favor of Ryan Pope on his Colorado Wage Act ("CWA") claim against The Integrated Associates, Inc. ("IA") and The Integrated Associates of Denver, Inc. ("IAD"). IA and IAD, represented by Jennifer Gokenbach, challenged the arbitration award in federal district court. The district court rejected IA's and IAD's challenge to the arbitration award and determined the arguments advanced by IA and IAD were meritless and vexatious in nature, warranting an order requiring Ms. Gokenbach to pay Mr. Pope's attorneys' fees pursuant to 28 U.S.C. § 1927.

In Case Number 21-1019, IA and IAD appeal the district court's order rejecting their motion to vacate the arbitration award. In Case Number 21-1319, Ms. Gokenbach appeals the district court's order granting Mr. Pope attorneys' fees under § 1927. We affirm both orders.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

## I.    BACKGROUND

Ethan Gillespie and Anthony Moser founded IA, an IT staffing company based in California.[1] In 2013, Mr. Gillespie and Mr. Moser sought to expand IA by starting a subsidiary, IAD, and hoped to tap Mr. Pope as its lead in Denver. In 2014, Mr. Pope commenced employment at IAD as its Regional Director; however, the terms of his employment, specifically whether he held an equity share in IAD, proved contentious. Nonetheless, the parties continued their working relationship through a 2015 employment agreement. The 2015 employment agreement contained an arbitration clause under which Mr. Pope agreed

> to submit to any future claims arising out, relating to, or in connection with [his] employment, or the termination of that employment, . . . performance or breach of this agreement . . . to binding arbitration and that the arbitration clause constitutes a waiver of [his] right to a jury trial and relates to the resolution of all disputes relating to all aspects of the company/employee relationship.

App. in Case No. 21-1019 at 24.[2]

Mr. Pope had a successful year in 2015, generating $500,000 in gross profits for IAD and earning praise from Mr. Gillespie and Mr. Moser. But, when it came

---

[1] Unless otherwise noted, we take the facts about Mr. Pope's employment at IAD from the arbitrator's Final Award of Arbitration. Although IA and IAD challenge whether Mr. Pope could submit his CWA claim to arbitration, the appeals do not raise any challenges to the arbitrator's factual findings.

[2] The Final Award of Arbitration does not include this arbitration clause language and the 2015 employment agreement is not included in the appendices filed in either appeal. We quote the language from IA's and IAD's motion to compel arbitration, which Mr. Pope has not challenged.

time to renew the employment agreement in 2016, the issue of Mr. Pope acquiring an equity share of IAD reemerged. The parties did not reach an agreement, Mr. Gillespie and Mr. Moser unilaterally upped their performance expectations for Mr. Pope, and then terminated Mr. Pope's employment when he did not meet the heightened performance metrics. Litigation ensued.

Mr. Pope filed suit in Colorado state court, raising eight causes of action: (1) a CWA claim; (2) negligent misrepresentation; (3) fraudulent representation; (4) wrongful termination; (5) breach of contract; (6) promissory estoppel; (7) breach of the duty of good faith and fair dealing; and (8) unjust enrichment. Mr. Pope named IA, IAD, Mr. Gillespie, and Mr. Moser as defendants. The defendants removed the case to federal court based exclusively on diversity jurisdiction. Mr. Pope filed a motion to remand, asserting that IAD, like himself, was a Colorado citizen such that there was a lack of complete diversity between the parties for purposes of diversity jurisdiction. Meanwhile, IA, IAD, Mr. Gillespie, and Mr. Moser filed a motion to compel arbitration.

On Mr. Pope's motion to remand, the district court found that IAD, which was incorporated in Delaware, had a principal place of business in California, not Colorado, such that diversity jurisdiction existed. On the motion to compel arbitration, the district court concluded the arbitration provisions in the employment agreement controlled all but the CWA claim and compelled arbitration of the seven other claims. With respect to the CWA claim, however, the district court concluded Colorado law protected an employee's right to trial by jury, precluding enforcement

4

of an arbitration provision against an employee advancing such a claim. In full, the district court's discussion of the CWA claim stated:

> While Mr. Pope's claims for compensation, bonuses, and an equity interest in IAD/IA under the terms of his [2015 employment agreement] are subject to arbitration, his First Claim for Relief under the Colorado Wage Claims Act is not. *See Lambdin v. Dist. Court in the 18th Judicial Dist.*, 903 P.2d 1126, 1130 (Colo. 1995) ("an arbitration provision that waives an employee's rights under the Wage Claim Act is void"). The Colorado Wage Act guarantees a right to a trial. *Id.* at 1130; *see also* Colo. Rev. Stat. 8-4-110(2) (1987) ("Any person claiming to be aggrieved . . . pursuant to this article may file suit in any court."). Because the Colorado Wage Claim Act guarantees a right to a trial, [Mr. Pope's] wage claim is exempt from arbitration.

*Id.* at 60.

IA, IAD, Mr. Gillespie, and Mr. Moser filed a notice of appeal from the district court's order partially denying their motion to compel arbitration. Approximately two weeks after commencement of the appeal, Mr. Pope, in the district court, voluntarily dismissed his case. The dismissal in district court caused this court to dismiss the appeal filed by IA, IAD, Mr. Gillespie, and Mr. Moser.

Eight months later, Mr. Pope decided to pursue all his claims in a single forum by filing a demand for arbitration, which included (1) the seven claims the district court ruled were subject to mandatory arbitration; (2) the CWA claim; and (3) a new claim for specific performance. IA, IAD, Mr. Gillespie, and Mr. Moser filed a response to the arbitration demand that, in passing, raised a defense that Mr. Pope's "claims [we]re barred by the doctrine waiver, latches and estoppel." *Id.* at 88. The response, however, did not contend the arbitrator lacked jurisdiction to hear Mr. Pope's CWA claim. And nothing in the record demonstrates that IA, IAD,

5

Mr. Gillespie, and Mr. Moser ever contended during arbitration that the arbitrator lacked jurisdiction.

Following a three-day hearing, the arbitrator found IA and IAD had committed several breaches of the 2015 employment agreement. On the CWA claim, the arbitrator awarded Mr. Pope $145,438.60 in damages, attorneys' fees, and costs against IA and IAD.[3]

The litigation underlying these appeals ensued, with IA and IAD filing a petition to vacate the arbitration award in federal court. In the petition, IA and IAD alleged the federal district court could take diversity jurisdiction over the proceeding and that IAD "is a corporation in good standing organized under the laws of Delaware. The Integrated Associates of Denver, Inc. is no . . . longer doing business, *but is registered to conduct business in Colorado with a principal place of business located at 100 Fillmore Street, Suite 500, Denver, Colorado 80206.*" *Id.* at 145 (emphasis added). In support of the petition to vacate the arbitration award, IA and IAD filed a brief arguing, in part, that the arbitrator lacked jurisdiction over the CWA claim.[4] On this argument, which is the only argument IA and IAD pursue on appeal, IA and IAD contended:

---

[3] The Final Award of Arbitration did not assess any liability or damages against Mr. Gillespie and Mr. Moser and they are not parties to these appeals.

[4] IA and IAD also argued (1) they were deprived of a fair hearing where the arbitrator permitted Mr. Pope to admit an undisclosed exhibit summarizing his damages; (2) the arbitrator needed to hold a reasonableness hearing before awarding Mr. Pope attorneys' fees and costs; and (3) the arbitrator erred in classifying some

6

Last but not least, [the district court in the 2016 litigation] held that Mr. Pope's [CWA] claim[] w[as] not subject to arbitration in the district court action preceding arbitration . . . .

*Although [IA and IAD] did not object to proceeding with the [CWA] claim in arbitration*, any award made under the [CWA] is nonetheless erroneous for lack of jurisdiction and must be corrected because the U.S. District Court entered a binding Order that Mr. Pope's [CWA] claim[] could not be not properly adjudicated in arbitration. A defect in subject matter jurisdiction can never be waived . . . .

Here, the parties fully briefed their positions on whether Mr. Pope's [CWA] claim[] w[as] subject to arbitration in Case No. 16-cv-02588-JLK. In short, Mr. Pope argued his [CWA] claim was not subject to arbitration and IA and IAD argued it was. [The district court] ultimately ruled that Mr. Pope's [CWA] claim was not subject to arbitration and must be heard in court. In other words, [the district court's] Order deprived the arbitration forum of subject matter jurisdiction to hear the [CWA] claim. Regardless of whether the parties proceeded to arbitration on the [CWA] claim, the subject matter jurisdiction of the [CWA] claim was determined by, and remained with, the court and not in arbitration, and any arbitration award made on the [CWA] claim is invalid and unenforceable for lack of subject matter jurisdiction.

Accordingly, the final award related to [CWA] damages issued by the arbitrator in favor of Mr. Pope lacks jurisdiction and authority and should be vacated as invalid and unenforceable.

*Id.* at 168–69 (citations omitted) (emphasis added). Mr. Pope defended the propriety of the arbitration proceeding and award. In his response brief, Mr. Pope also sought attorneys' fees and costs under 28 U.S.C. § 1927, arguing IA and IAD lacked a reasonable basis in law to seek vacatur of the arbitration award.

---

damages as CWA damages rather than breach of contract damages. IA and IAD do not pursue any of these three arguments on appeal. And Ms. Gokenbach does not rely upon the reasonableness of any of these three arguments when challenging the district court's attorneys' fees award. Accordingly, we do not consider these three arguments when resolving the appeals.

Sixteen months after the parties completed briefing, the district court denied IA's and IAD's petition to vacate the arbitration award. The district court held IA and IAD, by participating in the arbitration proceeding without challenging the arbitrator's ability to address the CWA claim, waived their challenge to the arbitrator's ability to resolve Mr. Pope's CWA claim. The district court also addressed Mr. Pope's request for attorneys' fees, concluding the challenges raised by IA and IAD were not capable of supporting the vacatur of an arbitration award given the narrow standard of review permitted by the Federal Arbitration Act ("FAA"). Accordingly, the district court deemed IA's and IAD's effort to vacate the arbitration award "unreasonable" and directed Mr. Pope to file a motion for attorneys' fees. *Id.* at 209.

Mr. Pope complied with the court's direction by filing a Motion for Award of Attorney Fees. Supp. App. in No. 21-1319 at 4–7. An affidavit from a Denver-based attorney attesting to the reasonableness of the hourly rates sought by counsel for Mr. Pope accompanied Mr. Pope's motion. IA and IAD advanced two responses to Mr. Pope's efforts to obtain attorneys' fees. First, and prior to Mr. Pope filing his motion, IA and IAD filed a motion to reconsider, arguing, in part, that 28 U.S.C. § 1927 permitted a court to award attorneys' fees as a sanction against an attorney but not against a party. Additionally, through the motion to reconsider, Ms. Gokenbach, asserted that she had a reasonable basis for advocating for vacatur of the arbitration award. Second, IA and IAD filed a response to Mr. Pope's motion for attorneys' fees, challenging the reasonableness of the fee requested. In a separate

8

filing, Ms. Gokenbach, as an "Interested Party," responded to Mr. Pope's motion for attorneys' fees. In her response, Ms. Gokenbach contended (1) Mr. Pope failed to comply with the local rules by not filing a separate motion when seeking attorneys' fees; (2) the petition to vacate the arbitration award was not baseless or so unreasonable as to satisfy the standard for § 1927 sanctions; and (3) the fees requested by Mr. Pope were unreasonable.

The district court granted reconsideration in part and denied it in part. The district court agreed with IA and IAD that § 1927 could not be applied against a party as it permitted an award of fees against only counsel. But the district court held sanctions against Ms. Gokenbach were appropriate because the petition to vacate the arbitration award prolonged litigation, was "reckless and unreasonable," and did not advance any argument capable of satisfying the high standard for vacating an arbitration award.[5] App. in No. 21-1319 at 116. The district court also rejected Ms. Gokenbach's argument that Mr. Pope failed to comply with the local rules, concluding Ms. Gokenbach had adequate notice of the requested sanctions and all

_____

[5] The district court also stated (1) Ms. Gokenbach "had no plausible basis to challenge the outcome of the arbitration," App. in Case No. 21-1319 at 113; (2) "The Motion to Vacate failed to even allege, let alone prove, any of the grounds enumerated in the Federal Arbitration Act for overturning an arbitration award," *id.* at 114; and (3) Ms. Gokenbach "unreasonably and vexatiously multiplied these proceedings by asserting arguments that lacked legal basis, by making conflicting arguments about the binding nature of arbitration, and by attempting to relitigate issues that had already been fully and fairly resolved through arbitration," *id.* at 117.

parties fully briefed the issue. Thus, the district court granted Mr. Pope's request for attorneys' fees pursuant to 28 U.S.C. § 1927 as against Ms. Gokenbach.

These appeals followed, with Case Number 21-1019 being IA's and IAD's appeal from the denial of their petition to vacate the arbitration award, and Case Number 21-1319 being Ms. Gokenbach's appeal from the order awarding attorneys' fees. In their appeal, IA and IAD advance a single argument—we should reverse the district court's denial of their petition to vacate the arbitration award because Mr. Pope could not submit his CWA claim to arbitration. In her appeal, Ms. Gokenbach advances two arguments: (1) Mr. Pope did not comply with the local rules and file a motion seeking attorneys' fees; and (2) it was reasonable for her to rely upon the district court's order in Case Number 1:16-cv-02588-JLK regarding arbitrability to contend Mr. Pope could not submit his CWA claim to arbitration.

## II.    DISCUSSION

We start by discussing the district court's subject matter jurisdiction over IA's and IAD's petition to vacate the arbitration award. After assuring ourselves that subject matter jurisdiction existed, we turn to the merits of the arguments advanced by IA and IAD, and then by Ms. Gokenbach.

### A.    *Jurisdiction*

In their petition to vacate the arbitration award, IA and IAD rely exclusively on diversity jurisdiction under 28 U.S.C. § 1332 as their jurisdictional gateway into federal court. "Diversity jurisdiction requires complete diversity—no plaintiff may be a citizen of the same state as any defendant." *Grynberg v. Kinder Morgan Energy*

10

*Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). "[A] corporation is a citizen of its state of incorporation and the state where its principal place of business is located." *Grynberg*, 805 F.3d at 905 (citing 28 U.S.C. § 1332(c)(1)). To determine a corporation's principal place of business, a court applies the "'nerve center' test." *Hertz Co. v. Friend*, 559 U.S. 77, 95 (2010). In applying this test, courts seek to determine "the center of overall direction, control, and coordination" of a corporation, as well as where the top officers of the corporation are located and where "the bulk of a company's business activities visible to the public take place." *Id.* at 96.

"The burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it." *Id.* "To determine whether a party has adequately presented facts sufficient to establish federal diversity jurisdiction, appellate courts must look to the face of the complaint." *Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

In their petition to vacate the arbitration award, IA and IAD alleged that IAD "is a corporation in good standing organized under the laws of Delaware. The Integrated Associates of Denver, Inc. is no . . . longer doing business, but is registered to conduct business in Colorado *with a principal place of business located at 100 Fillmore Street, Suite 500, Denver Colorado, 80206*." App. in Case No. 21-1019 at 145 (emphasis added). IA, and IAD also alleged that Mr. Pope "is an individual and resident of Colorado." *Id.* at 146. Accordingly, if an inactive corporation's last principal place of business qualifies as a place of citizenship for

11

diversity jurisdiction, the face of the petition defeats diversity jurisdiction. *See Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 141 (2d. Cir. 1991) (relying on dissolved corporation's last principal place of business to determine citizenship); *Pratt v. Green Bay Dists., Inc.*, No. 1:17-cv-02809-LJM-MJD, 2017 WL 4250111, at *2–3 (S.D. Ind. Sept. 26, 2017) (adopting Second Circuit's approach); *see also Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999) (using case-by-case approach to determine if last principal place of business qualified as basis for citizenship); *Harris v. Black Clawson Co.*, 961 F.2d 547, 551 (5th Cir. 1992) (same); *but see Holston Invsts., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1071 (11th Cir. 2012) (concluding dissolved corporation has no principal place of business for purposes of citizenship and diversity jurisdiction); *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir. 1995) (same).

Observing this potential defect, we ordered supplemental briefing regarding whether the district court had subject matter jurisdiction over IA's and IAD's petition to vacate the arbitration award. In their supplemental brief, IA and IAD represent they erred in alleging that IAD's last principal place of business was in Colorado. Rather, they now contend IAD's last principal place of business was in California and that IAD had only a "principal street address" in Colorado. In support of this position, IA and IAD attached to their supplemental brief (1) Periodic Reports from 2015 to 2019 filed with the Colorado Secretary of State that identify IAD's principal place of business as being in San Diego, California; (2) a declaration from Mr. Moser; and (3) a copy of the district court's order denying Mr. Pope's motion to

12

remand in the 2016 litigation. In response, Mr. Pope urges us to adopt IA's and

IAD's correction of the record regarding IAD's last principal place of business.

"Where the pleadings are found wanting, an appellate court may also review

the record for evidence that diversity does exist." *Penteco Corp. Ltd. P'ship—1985A*,

929 F.2d at 1521. Considering the evidence attached to IA's and IAD's supplemental

brief, we accept IA's and IAD's corrected representation. Such is consistent with

IA's and IAD's notice of removal and the district court's ruling in the 2016 litigation.

It is also consistent with Mr. Gillespie and Mr. Moser, who were based in California

yet retained the authority to terminate Mr. Pope's employment and to hold full equity

in IAD over Mr. Pope's attempt to negotiate an equity share as a condition of his

employment. Accordingly, we are satisfied that the district court had subject matter

jurisdiction over IA's and IAD's petition to vacate the arbitration award.

### B.    Case No. 21-1019: Petition to Vacate Final Arbitration Award

### 1.    Appellate Standard of Review & Judicial Review of Arbitration Awards

Although IA and IAD fail to identify a standard of review,[6] the Supreme Court

has succinctly stated the generally applicable standard of review:

---

[6] Under the Federal Rules of Appellate Procedure, an opening brief must contain "for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)." Fed. R. App. P. 28(a)(8)(B). "The omission of such a basic component of an appellate brief is inexcusable" and can serve as a basis for dismissing an appeal. *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1161 (10th Cir. 2007). However, because the standard of review is easily discernable and IA and IAD did not gain an apparent advantage by omitting this information from their brief—i.e., they did not near the word limit provided by Federal Rule of Appellate

> [R]eview of . . . a district court decision confirming an arbitration award on the ground that the parties agreed to submit their dispute to arbitration, should proceed like review of any other district court decision finding an agreement between parties, *e.g.*, accepting findings of fact that are not 'clearly erroneous' but deciding questions of law de novo.

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947–48 (1995). We have applied this standard of review to district court orders resolving petitions to vacate an arbitration award. *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018).

The FAA controls judicial review of an arbitration award, limiting the grounds upon which a court may vacate an arbitration award. 9 U.S.C. § 10. In accord with the FAA, a court "must give *extreme deference* to the determination of the arbitrator for the standard of review of arbitral awards is *among the narrowest known to law*. 'By agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *THI of N.M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1083 (10th Cir. 2017) (citation omitted) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)). In accord with this deference, a court should "exercise great caution when a party asks for an arbitration award to be set aside" as "only extraordinary circumstances warrant vacatur of an arbitral award." *Id.* (internal quotation marks and ellipsis omitted).

---

Procedure 32(a)(7)(B) and did not omit the standard of review in favor of advancing an argument—we exercise our discretion and proceed with review of the merits of their appeal.

Under the FAA, "vacation of an award is only proper in a few instances that include fraud, corruption, arbitrator misconduct, and arbitrator overreach." *Dish Network L.L.C.*, 900 F.3d at 1243 (citing 9 U.S.C. § 10(a)). "Various courts have determined that vacation is also appropriate when the arbitration award violates public policy, when the arbitrator did not conduct a fundamentally fair hearing, or when an arbitrator's decision is based on a manifest disregard of the law, defined as willful inattentiveness to the governing law." *Id.* (internal quotation marks omitted). Finally, "[q]uestions of arbitrability are presumptively reserved for 'judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Goldgroup Resources, Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1190 (10th Cir. 2021) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

## 2.    Analysis

While IA and IAD raised several challenges to the arbitration award before the district court, they pursue a single challenge on appeal—the CWA claim was not arbitrable. In support of this argument, IA and IAD contend (1) the district court's opinion on compelling arbitration in the 2016 litigation held the claim could not be submitted to arbitration; and (2) Colorado law requires submission of CWA claims to a court. Mr. Pope counters that IA and IAD waived these arguments by not raising them before the arbitrator and that the arguments are without merit. We conclude IA and IAD waived their arbitrability argument by not raising it before the arbitrator, but even if the argument had not been waived, it is without merit.

15

"The Supreme Court has observed that to the extent parties 'forcefully object to the arbitrator's deciding their dispute,' they preserve their objection even if they follow through with arbitration." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1148 (10th Cir. 2007) (quoting *First Options of Chicago, Inc.*, 514 U.S. at 946). "On the other hand, many courts have held that, absent an explicit statement objecting to the arbitrability of the dispute, a party cannot 'await the outcome and then later argue that the arbitrator lacked authority to decide the matter.'" *Id.* (quoting *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000)). This court has adopted traditional waiver rules for arbitration proceedings because

> a rule of waiver is important to advance the goals of arbitration as an efficient method of dispute resolution for which parties may contract in advance. "It would be unreasonable and unjust to allow a party to challenge the legitimacy of the arbitration process, in which he had voluntarily participated over a period of several months."

*Id.* at 1149 (quoting *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) (per curiam)).

In response to Mr. Pope's waiver argument, IA and IAD fail to point to anything in the record demonstrating that they challenged the arbitrability of the CWA claim while before the arbitrator. The closest they come is identifying an affirmative defense based on "waiver, latches and estoppel" raised in their answer to Mr. Pope's demand for arbitration. App. in Case No. 21-1019 at 88. But IA and IAD never connected this boilerplate assertion to their present contention that the decision in the 2016 litigation precluded arbitration of the CWA claim. And, before the

16

district court, IA and IAD acknowledged they "*did not object to proceeding with the [CWA] claim in arbitration*." App. in Case No. 21-1019 at 168.

At oral argument, when questioned about whether they had raised arbitrability before the arbitrator, IA and IAD responded that there was a "problem and a complexity" presenting the issue to the arbitrator where, in their opinion, the district court already decided the issue of arbitrability in the 2016 litigation. Oral Argument in Case No. 21-1019 at 12:18–12:22. This argument, however, might have merit only if the 2016 litigation involved the same issue of arbitrability as the one presently raised by IA and IAD. It does not.

In 2016, the parties litigated whether IA and IAD, based on the arbitration provision in the 2015 employment agreement, could *compel* Mr. Pope to submit his CWA claim to arbitration. Meanwhile, IA and IAD currently argue that Mr. Pope was precluded from *voluntarily* submitting his CWA claim to arbitration. Thus, although the district court in the 2016 litigation ruled the CWA claim was "exempt" from arbitration, App. in Case No. 21-1019 at 60, it did so in a clearly different context because the question there was only whether arbitration was mandatory, not whether it was permissive. *Cf. Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1095 n.2 (11th Cir. 2004) (observing "'nonarbitrable' simply refers to a claim that a plaintiff cannot be compelled to arbitrate. It does not necessarily mean that arbitration of such a claim is prohibited or illegal"). Accordingly, the 2016 ruling does not provide any law-of-the-case on the issue now raised by IA and IAD, and by failing to raise the issue before the arbitrator they waived the argument.

17

But even if IA and IAD had not waived the argument, the argument is without merit. As just stated in our waiver analysis, the 2016 litigation did not address whether the CWA claim could be submitted to arbitration, only that IA and IAD could not compel arbitration on that claim. Furthermore, Colorado law does not support IA's and IAD's position that a CWA claim cannot be submitted to arbitration by an employee. The relevant provision of the CWA states, "[a]ny person claiming to be aggrieved by violation of any provisions of this article or regulations prescribed pursuant to this article may file suit in any court having jurisdiction over the parties without regard to exhaustion of any administrative remedies." Colo. Rev. Stat. § 8-4-110(2) (emphasis added). Interpreting a similarly worded predecessor statute, the Colorado Supreme Court held that under the CWA an employee was "entitled to commence a civil action in court" and "[a]ny agreement, written or oral, by any employee purporting to waive or modify [an employee's] rights in violation of [the CWA] [was] void." *Lambdin v. District Court in & for the 18th Judicial District of Cnty. of Arapahoe*, 903 P.2d 1126, 1129 (Colo. 1995) (citing Colo. Rev. Stat. §§ 8-4-123, 125). But nothing in *Lambdin* suggests an employee cannot opt to submit his CWA claim to arbitration. Further, the permissive nature of an employee's right to file a suit, as signaled by the statute's use of "may," suggests the employee can also seek other forums for redress of an alleged CWA violation. *See People v. Dist. Ct., Second Judicial Dist.*, 713 P.2d 918, 922 (Colo. 1986) ("[T]he plain meaning of the relevant language supports such a construction. Just as 'shall' and 'require' are most commonly mandatory in effect, 'may' is usually permissive or directory."). Finally,

18

IA and IAD do not direct us to any Colorado case holding that an employee must file suit in court to advance a CWA claim, and our own research has located no such case. Accordingly, we conclude there is no basis, either within the history of this case or Colorado law, for IA's and IAD's position that Mr. Pope needed to litigate, rather than arbitrate, his CWA claim. Therefore, we affirm the district court's order denying IA's and IAD's petition to vacate the arbitration award.

### C.    Case No. 21-1319: Attorneys' Fees under 28 U.S.C. § 1927

This court "generally review[s] an award of fees under § 1927 for an abuse of discretion." *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015). A district court abuses its discretion if its factual findings "rest on an erroneous view of the law." *Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990)). A district court also abuses its discretion "when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Alvarez-Bernabe*, 626 F.3d 1161, 1165 (10th Cir. 2010) (quotation marks omitted).

The district court ordered Ms. Gokenbach to pay Mr. Pope attorneys' fees under 28 U.S.C. § 1927, which reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"[T]he text of §1927 . . . indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders." *Hamilton v. Boise Cascade*

*Exp.*, 519 F.3d 1197, 1205 (10th Cir. 2008). To impose sanctions, a court "need not

find that an attorney subjectively acted in bad faith. Rather any conduct that, viewed

objectively, manifests either intentional or reckless disregard of the attorney's duties

to the court is sanctionable." *Baca*, 806 F.3d at 1268 (internal quotation marks and

brackets omitted). Although the standard is an objective standard, a court imposing

sanctions must "guard against dampening the legitimate zeal of an attorney in

representing h[er] client." *Id.* (internal quotation marks omitted).

We have had occasion to review the award of § 1927 sanctions in proceedings

challenging an arbitration decision, stating that "[b]ecause arbitration presents such a

narrow standard of review, Section 1927 sanctions are warranted if the arguments

presented are completely meritless." *Lewis*, 500 F.3d at 1153 (internal quotation

marks omitted). In *Lewis*, we went on to favorably quote language from an Eleventh

Circuit decision addressing § 1927 in a case challenging an arbitration award:

> When a party who loses an arbitration award assumes a never-say-die
> attitude and drags the dispute through the court system without an
> objectively reasonable belief it will prevail, the promise of arbitration is
> broken. Arbitration's allure is dependent upon the arbitrator being the
> last decision maker in all but the most unusual cases. The more cases
> there are, like this one, in which the arbitrator is only the first stop along
> the way, the less arbitration there will be. If arbitration is to be a
> meaningful alternative to litigation, the parties must be able to trust that
> the arbitrator's decision will be honored sooner instead of later.
> Courts cannot prevent parties from trying to convert arbitration losses
> into court victories, but it may be that we can and should insist that if a
> party on the short end of an arbitration award attacks that award in court
> without any real legal basis for doing so, that party should pay
> sanctions.

*Id*. at 1153–54 (quoting *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913 (11th Cir. 2006), *abrogated on other grounds*).

Before the district court, IA and IAD advanced four challenges to the arbitration award; but, on appeal, Ms. Gokenbach relies only on the reasonableness of her interpretation of the district court order in the 2016 litigation and the related proposition that the CWA claim was not arbitrable. As discussed earlier, this argument objectively lacked merit. It was objectively unreasonable for Ms. Gokenbach to read the district court's 2016 order concluding IA and IAD could not *compel* arbitration as holding, or even supporting the proposition, that Mr. Pope could not *voluntarily* submit his CWA claim to arbitration. Rather, the district court did not err in concluding that Ms. Gokenbach's argument that the 2016 order precluded Mr. Pope from submitting his CWA claim to arbitration represented a vexatious litigation tactic that ran afoul of the spirit of arbitration and permitted sanctions under the language and purpose of § 1927. Accordingly, the district court did not abuse its discretion by ordering Ms. Gokenbach to pay Mr. Pope's attorneys' fees stemming from IA's and IAD's petition to vacate the arbitration award.[7]

---

[7] Ms. Gokenbach also argues the district court erred in awarding Mr. Pope attorneys' fees where he first presented his request for attorneys' fees in his response to IA's and IAD's petition to vacate the final arbitration award rather than in a motion. Under the District of Colorado Local Rules, "[a] motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." D. Colo. Local R. 7.1(d). A local rule also governs motions for attorneys' fees, stating:

    **(a)**    **Motion Supported by Affidavit.** Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit.

21

## III.    CONCLUSION

We AFFIRM the district court's order denying IA's and IAD's petition to vacate the arbitration award. We also AFFIRM the district court's order requiring Ms. Gokenbach to pay Mr. Pope's attorneys' fees pursuant to 28 U.S.C. § 1927.


Entered for the Court


Carolyn B. McHugh
Circuit Judge

---

    **(b)**    **Content of Motion.** The motion shall include the following for each person for whom fees are claimed:
        (1)    a summary of relevant qualifications and experience; and
        (2)    a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.

D. Colo. Local R. 54.3.

We apply an abuse of discretion standard when reviewing a district court's application of its local rules. *Hernandez v. George*, 793 F.2d 264, 268 (10th Cir. 1986). Although Mr. Pope first raised the issue of attorneys' fees in a responsive pleading, at the district court's direction, he submitted a motion and accompanying affidavits that complied with Local Rules 7.1(d) and 54.3. And contrary to Ms. Gokenbach's apparent view, we see nothing in the local rules that prevents a party from curing a violation of Local Rule 7.1(d) by filing a motion after having first raised an issue in a responsive pleading. Furthermore, as recognized by the district court, the matter of attorneys' fees under 28 U.S.C. § 1927 was thoroughly briefed by all interested parties, including Ms. Gokenbach. Accordingly, we conclude the district court did not abuse its discretion by rejecting Ms. Gokenbach's argument premised on application of Local Rule 7.1(d).